UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-407-RJC

| | |
|---|---|
| TROY N. PERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| | ) |
| ROBERT C. LEWIS, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Alvin W. Keller, Jr., Robert C. Lewis, Lawrence Parsons, and George Solomon. (Doc. No. 54). Also before the Court is Plaintiff's "Motion to Reimburse Plaintiff with the Amount for Damage of Bodily Harm," (Doc. No. 58).

## I.  BACKGROUND

### A.  Procedural Background

Pro se Plaintiff Troy N. Person filed this action on July 2, 2012, pursuant to 42 U.S.C. § 1983. When Plaintiff filed this action he was a North Carolina prisoner, but he has since been released from prison. Plaintiff named the following seven individuals as Defendants: (1) Captain Covington, Correctional Officer, Lanesboro Correctional Institution ("Lanesboro"); (2) Robert C. Lewis, North Carolina Department of Public Safety, Director of the Division of Prisons; (3) George Solomon, North Carolina Department of Public Safety Central, Regional Director; (4) Richard Neely, Former Administrator, Lanesboro; (5) Lawrence Parsons, Administrator,

1

Lanesboro; (6) Alvin W. Keller, Jr., former Secretary of North Carolina Department of Public Safety; and (7) S.R. Cobb, Program Services Coordinator, Lanesboro.

Plaintiff asserts an Eighth Amendment deliberate indifference failure to protect claim based on his allegations that Defendants failed to protect him from assaults by other inmates while he was incarcerated at Lanesboro Correctional Institution in 2010. On August 19, 2014, the Court conducted an initial review and dismissed Cobb as a Defendant. Furthermore, Defendants Covington and Neely were never served with the Complaint. (Doc. No. 16). On December 16, 2015, Defendants Alvin Keller, Robert Lewis, Lawrence Parsons, and George Solomon filed the pending summary judgment motion.[1] (Doc. No. 54). On January 20, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 57). Plaintiff did not respond to the summary judgment motion with his own affidavits and summary judgment evidence. He filed only one three-page document, titled a "Motion to Reimburse Plaintiff with the Amount for Damage of Bodily Harm," in which Plaintiff details his injuries from the assaults by other inmates and demands $3.5 million in damages.

    B.    Factual Background

    1.    Plaintiff's Failure to Protect Claim and the Summary Judgment Evidence

    a.    Plaintiff's Allegations

Plaintiff alleges in the Complaint that in September 2010 and November 2010, while he was incarcerated at Lanesboro, other inmates who were known gang members attacked and beat

---

[1] Defendants assert that Plaintiff did not serve any discovery requests on Defendants.

him in three separate assaults. (Doc. No. 1 at 5-6). Plaintiff alleges that the assaults occurred on September 14, 2010, November 7, 2010, and November 13, 2010. (Id.). Plaintiff refers to Lanesboro as an "STG" (gang) prison and asserts that his life was in danger because he provided information to authorities regarding gang-related matters in 1998—twelve years before his transfer to Lanesboro. (Id. at 5). Plaintiff alleges that he had complained to Defendants before the assaults that gang members had threatened to attack him, but that Defendants did nothing to protect Plaintiff. See (Id. at 8-12). Plaintiff alleges that one assault by a gang member in November 2010 was severe enough to send Plaintiff to the hospital and that he was operated on in the emergency room on November 13, 2010. (Id.). Plaintiff alleges that he received 62 stitches and suffers from permanent nerve damage. (Id. at 7). Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect him from a known threat from the gang members in the prison. (Id.). Plaintiff seeks compensatory damages.

As to the moving Defendants, Plaintiff alleges that he wrote a letter of complaint to Defendant Parsons on November 4, 2010, stating that members of the Bloods and Crips gangs were threatening to kill Plaintiff, but Parsons did nothing. (Id. at 6). Plaintiff alleges that Defendant Lewis is liable because he was notified of Plaintiff's complaints about the gang member threats before the assaults occurred, but he did nothing. (Id. at 8). Defendant alleges that Defendants Keller and Solomon are liable because they failed to protect Plaintiff after Plaintiff submitted a prison grievance on October 21, 2010. (Id.).

   b.   Defendants' Summary Judgment Materials

In support of the summary judgment motion, Defendants have submitted the affidavits of Lawrence Parsons and Sarah Cobb. See (Doc. No. 55-1: Parsons Aff.; Doc. No. 55-12: Cobb Aff.). Defendants have also submitted incident reports related to the alleged assaults, witness

3

statements, Plaintiff's administrative grievances related to his claims, Plaintiff's offender history, and documents relating to the disciplinary action against Plaintiff after the incidents. See (Id.).

Defendants' summary judgment evidence shows the following:

Plaintiff was admitted to NCDPS in 1992. He was released from prison in 2015 and is no longer incarcerated. (Doc. No. 55-1 at ¶ 3). While incarcerated, Plaintiff pled or was found guilty of numerous charges involving fighting with staff and other inmates. Plaintiff has acknowledged that he had issues with his own assaultive behavior while in prison. (Id. at ¶¶ 4, 6; Doc. No. 55-2: Ex. A to Parsons Aff.). Plaintiff also repeatedly requested transfers for different reasons while he was incarcerated. (Doc. No. 55-1 at ¶ 7). Plaintiff requested to be transferred from the facility where he was housed before Lanesboro due to concerns regarding the staff at the prior facility. (Id. at ¶¶ 6-7). Within two days of his arrival at Lanesboro, Plaintiff requested a transfer to another facility—not because he was in fear of other inmates, but because two officers who are not named as Defendants in this case allegedly acted unprofessionally towards him. (Id. at ¶ 7; Doc. No. 55-3: Ex. B to Parsons Aff.). Plaintiff was housed at Lanesboro from September 1, 2010, until January 19, 2011. (Doc. No. 55-1 at ¶ 5). While Plaintiff asserts in this case that his life was in danger at Lanesboro because he allegedly provided information to officials twelve years earlier regarding a gang member, Defendant Parsons, the Assistant Superintendent at Lanesboro at the time, states in his sworn Affidavit that he was never informed that Lanesboro was not a suitable facility for Plaintiff or that protective custody was necessary for Plaintiff. No one indicated that any specific inmates at Lanesboro posed a threat to Plaintiff. (Id. at ¶¶ 9-10).

Here, Plaintiff complains of three assaults that occurred at Lanesboro. The first assault occurred on September 14, 2010. (Id. at ¶ 14; see also Doc. No. 55-5: Ex. D to Parsons Aff.).

4

After the incident, Plaintiff pled and/or was found guilty of engaging in a mutual confrontation with the other inmate involved in the incident. (Doc. No. 55-1 at ¶ 15). In a statement written by Plaintiff after the incident, Plaintiff states that this confrontation occurred because he was trying to protect a wheelchair-bound inmate from being assaulted by another inmate. (Id. at ¶ 15; Doc. No. 55-5: Ex. D to Parsons Aff.). Plaintiff's statement does not refer to the 1998 events or gang-related activity. (Id.). Furthermore, Plaintiff acknowledged in his statement that he chose to get involved in this confrontation; thus, the record evidence shows that this was a mutual confrontation. (Id.). Plaintiff states further that no inmate hit him during this incident, and there is no evidence that Plaintiff sustained injuries during this incident. (Doc. No. 55-1 at ¶ 16; Doc. No. 55-5). No determinations were ever made that this incident was gang-related.

The second assault occurred on November 7, 2010. (Doc. No. 55-1 at ¶ 18; see also Doc. No. 55-6: Ex. E to Parsons Aff.). According to Plaintiff's written statement following the incident, Plaintiff was assaulted (hit and punched) after he had words with the two inmates involved in the incident. (Id.). In his written statement, Plaintiff asserted that one of the inmates asked him what he was looking at and Plaintiff responded, "I look where I want to, you walk in front of me." (Id.). Plaintiff was medically assessed later that day. No injuries were documented relating to the incident. (Doc. No. 55-1 at ¶ 19). As with the first assault, no determinations were ever made that this incident was gang-related. (Id. at ¶ 20).

The third assault occurred on November 13, 2010. (Id. at ¶ 21; see also Doc. No. 55-7: Ex. F to Parsons Aff.). During this assault, one inmate approached and cut Plaintiff with an object. Another inmate attempted to cut Plaintiff but was unable to do so. (Doc. No. 55-1 at ¶ 21). A code was called and officers immediately responded and brought the situation under control. (Id.). Plaintiff was medically assessed and treated on the date of the incident—

5

including treatment at an outside facility for lacerations sustained by Plaintiff. (Id.). Plaintiff did not write a statement after this incident during the facility's post-incident investigation. (Id. at ¶ 22).

The inmates involved in the three incidents were all disciplined. (Id. at ¶¶ 14; 19; 22). The facility never determined that any of the assaults were gang-related, or somehow related to the alleged events involving Plaintiff in 1998. (Id. at ¶¶ 15; 20; 23; 25). Rather, all three assaults appeared to be mutual confrontations—particularly the first two incidents. (Id. at ¶¶ 25; 42). Defendant Parsons states that he was never made aware of any prior tension between Plaintiff and these inmates, or of any threats made by these or any other inmates before the assaults. (Id. at ¶¶ 17; 26; 32; 42). Moreover, Plaintiff did not, at any time while he was in custody at Lanesboro, sign a form requesting protective custody. (Id. at ¶¶ 27-29).

While at Lanesboro, Plaintiff did submit letters and grievances to Lanesboro and NCDPS, voicing his general fears of being assaulted, but, again, Plaintiff's complaints were general in nature. In his letters and grievances, Plaintiff also complained about other matters (such as staff and property issues) and never complained of specific inmates or specific threats. (Id. at ¶¶ 34; 36; see also Doc. Nos. 55-8; 55-9; 55-10; 55-11: Exs. G, H, I, and J to Parsons Aff.). In one of the letters sent by Plaintiff to Defendant Parsons, Plaintiff specifically stated that he was not afraid of other inmates at Lanesboro. (Doc. No. 55-1 at ¶ 34; Doc. No. 55-8). In his letters and grievances, Plaintiff also repeatedly threatened lawsuits. (Doc. No. 55-1 at ¶ 34).

In his Affidavit, Defendant Parsons asserts that he and the facility investigated all of Plaintiff's complaints and responded to all of Plaintiff's letters. (Id. at ¶¶ 31-32; 35; 37; 39-40; 42; 44). Defendant Parsons states that neither he, nor any other officials at Lanesboro, were ever able to substantiate Plaintiff's complaint that he was being threatened or was in danger. (Id. at ¶¶

6

31-32; 35; 37; 39-40; 42; 44). Defendant Parsons and the facility were never made aware of any threats made by inmates against Plaintiff. (Id. at ¶¶ 31-32; 35; 37; 39-40; 42; 44). Defendant Parsons states that he was never made aware of any staff who would have prevented Plaintiff from requesting protective custody, or of doing any other act that placed Plaintiff in danger. (Id. at ¶¶ 11; 27). Moreover, staff investigated and provided responses to Plaintiff's concerns and complaints. (Id. at ¶¶ 31-32; 35; 37; 39-40; 42; 44). Finally, after the third assault, a decision was made to transfer Plaintiff to another facility, and Plaintiff was transferred away from Lanesboro on January 19, 2011. (Id. at ¶ 38).

In her affidavit, Sarah Cobb states that she and other named Defendants in this case (Defendants Lewis, Keller, and Solomon) responded to a grievance form submitted by Plaintiff. (Doc. No. 55-12 at ¶¶ 7-17). Specifically, Cobb was asked to investigate a grievance that Plaintiff sent to the Office of the Secretary of the Department of Corrections in late October of 2010. (Id. at ¶¶ 6-10). She did not determine, at any time during her investigation, that specific threats had been made against Plaintiff or that he was in need of protective custody or at a heightened risk of being assaulted. (Id. at ¶ 17).

None of the moving Defendants were present when any of the assaults occurred. (Doc. No. 55-1 at ¶ 9; Doc. No. 55-12 at ¶ 18). Defendants assert that they did not have any prior knowledge of the assaults, nor were they aware, at any relevant time, that Plaintiff was somehow at a heightened risk of being assaulted. (Doc. No. 55-1 at ¶¶ 13; 42-44; Doc. No. 55-12 at ¶ 18). Defendants further assert that no record evidence exists of prior tension between Plaintiff and the inmates involved in his assaults or of any known threats made against Plaintiff by these or any other inmates. (Doc. No. 55-1 at ¶¶ 10; 17; 20; 23; 25; 42-44; Doc. No. 55-12 at ¶ 17).

II. **STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

The Eighth Amendment requires prison officials to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Officials must take "reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). In other words, "[t]he government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833. Nonetheless, "[t]he burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." Pyles v. Fahim, 771 F.3d 403, 408-09 (7th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 325 (1986)). Not every "injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Instead, the Supreme Court has outlined two requirements for an Eighth Amendment failure to protect claim. First, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). In other words, the denial of the prisoner's constitutional rights must be "sufficiently serious." Id. Second, the prison official must have a "sufficiently culpable state of mind," id., which means the official either purposefully caused the harm or acted with "deliberate indifference," Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).

9

In the Eighth Amendment context, deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995). For a prison official to be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The test is subjective, not objective. Brice, 58 F.3d at 105. A prison official is not liable if he or she "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (finding that a prison official was not liable, because he did not actually draw the inference that the inmate was exposed to a substantial risk of serious harm). Whether Defendants were subjectively aware of the risk of harm can be shown either through direct evidence or circumstantial evidence of actual knowledge. Makdessi v. Fields, 789 F.3d 126 (4th Cir. 2015).

In opposing the summary judgment motion, Plaintiff has wholly failed to submit any evidence raising a genuine dispute of fact as to his failure to protect claim against Defendants. That is, Plaintiff has presented no evidence to rebut the evidence presented by Defendants showing that they were not aware of any threats made against Plaintiff before the assaults, or of any prior tension between Plaintiff and the inmates involved in his assaults.[2] Moreover, Plaintiff

---

[2] In Makdessi v. Fields, 789 F.3d 126 (4th Cir. 2015), the Fourth Circuit reversed and remanded for reconsideration a district court's finding, following a bench trial, in favor of the defendants on a prisoner's failure to protect claim. The Makdessi court noted that "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" Id. at 133 (quoting Farmer, 511 U.S. at 842) (some quotation marks

has presented no evidence to rebut Defendants' evidence showing that the three confrontations—particularly the first two—were mutual confrontations. Indeed, as noted, Plaintiff acknowledged as such in his statements after the incidents. Furthermore, Defendants have presented evidence that Plaintiff suffered no discernible injuries from the first two incidents, and that he was transferred away from Lanesboro after the third incident. Finally, Plaintiff has presented no evidence to rebut Defendants' evidence that they were not present during the assaults. It is undisputed that Defendants investigated and responded to all of Plaintiff's complaints and grievances and that Defendants never determined and never drew any conclusion, through their investigations, that Plaintiff was at a heightened risk of being assaulted, that he was being threatened, or that he needed to be in protective custody. (Doc. No. 55-1 at ¶¶ 42-44; Doc. No. 55-12 at ¶¶ 17-19). In sum, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendants were deliberately indifferent to Plaintiff's safety in failing to protect Plaintiff from assaults by another inmates. Thus, Defendants are entitled to summary judgment.[3]

IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

---

omitted). Unlike in this case, however, the Makdessi court had before it evidence of the prisoner's numerous complaints and grievances to prison officials about repeated physical and sexual abuse against him in the prison, and his requests to be placed in protective custody. Furthermore, the prisoner in Makdessi was noted to be "a short, middle-aged prisoner with physical and mental problems that ma[d]e him 'vulnerable to harassment and attacks by other inmates.'" Id. at 134. There is no such similar evidence in this action. That is, Plaintiff has offered no admissible evidence on summary judgment to rebut Defendants' sworn statements that Plaintiff had not complained about specific threats from gang members at the prison; had requested protection; nor is there any evidence in this case showing that Plaintiff was vulnerable to harassment and attacks by other inmates.

[3] Defendants raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.

1. Defendants' Motion for Summary Judgment, (Doc. No. 54), is **GRANTED**, and this action is dismissed with prejudice.

2. Plaintiff's "Motion to Reimburse Plaintiff with the Amount for Damage of Bodily Harm," (Doc. No. 58), is **DENIED**.

3. The Clerk is directed to terminate this action.

Robert J. Conrad, Jr.
United States District Judge